486 S.E.2d 778

**Barbara Ann SPENCE, Plaintiff Below, Appellant,**

v.

**Mark Vernon SPENCE, Defendant Below, Appellee.**

No. 23751.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1997.

Filed May 12, 1997.

Paul A. Ryker, Huntington, for Appellant.

Mark V. Spence, Huntington, Pro Se.

STARCHER, Justice.

This divorce action is an appeal by the plaintiff-appellant, Barbara Ann Spence, of an order granting the defendant-appellee, Mark Vernon Spence, the income tax exemption for the child of the parties. The plaintiff challenges the method used by the family law master in calculating "household income" to determine which party was allowed to exercise the tax exemption, and challenges the circuit court's ruling that the defendant is entitled to the exemption. We find no abuse of discretion by the family law master in reaching this conclusion, and therefore affirm the circuit court's decision.

I.

*Facts and Background*

The parties were formally divorced on April 9, 1993. The final divorce decree gave custody of the parties' only child Joshua to the plaintiff, and the defendant was ordered to pay child support of $225.00 per month. Subsequent to their divorce, the parties married other individuals.[1] The defendant continued to be employed, and his new wife was also employed. The plaintiff's husband was employed, but the plaintiff herself became unemployed. In early 1995, the plaintiff sought an increase in the defendant's child support obligation. In that proceeding, the family law master found that the defendant's

1. The plaintiff is now known as Barbara Ann Roy.

annual income was approximately $42,000.[2] By order dated May 18, 1995, the defendant's child support obligation was increased to $367.14 per month.

On May 10, 1995, the defendant moved for the circuit court to amend the final divorce decree to allow the defendant to use the dependent's income tax exemption [3] in determining his 1994 taxes. A hearing on the motion was held before the family law master, who found that the defendant and his new wife had a combined gross income of approximately $59,000 annually. The law master found that the plaintiff was unemployed and without income; however, the law master acknowledged that the plaintiff's new husband earned approximately $45,000 annually. For reasons not explained in the record, the law master considered the combined income of the defendant and his wife but not the combined income of the plaintiff and her spouse in allocating the tax exemption.

The plaintiff proffered evidence indicating that if she were allowed to apply the dependent tax exemption to her household income of $45,000, she would realize a tax savings of $368.00. The defendant's evidence suggested that if he and his wife were allowed to claim Joshua, the exemption would result in a tax savings of $676.00.

On August 15, 1995, the family law master recommended to the circuit court that the tax exemption be granted to the defendant. The law master recommended that beginning with the 1995 tax year, the plaintiff should provide yearly a written waiver of the exemption to the defendant, and she was to continue doing so on an annual basis so long as she was unemployed or until further order of the circuit court. The plaintiff filed exceptions to the recommendations, but on October 25, 1995 the circuit court without stating reasons accepted the family law master's conclusions and findings and entered an order approving the recommendations. A motion to alter or amend the order was filed by the plaintiff with the circuit court; the mo-

tion was denied on March 11, 1996. This appeal by the plaintiff followed.

## II.

### Discussion

#### A.

#### Internal Revenue Code Dependent's Exemption

The plaintiff appeals the circuit court's order on two grounds. She argues that the family law master improperly considered the incomes of the defendant and his wife together as a household unit, but refused to consider the income of the plaintiff's husband as part of her household unit, in determining which party should receive the federal income tax dependent exemption. She also argues generally that there was an insufficient disparity of income to warrant granting the income tax exemption to the defendant.

When taxpayers calculate their taxable income, they may deduct from their gross income certain exemptions specified in 26 U.S.C. § 151 [1993]. One of these exemptions is for each "dependent." 26 U.S.C. § 151(c) [1993]. The dependent tax exemption is defined, and its method of use set forth, in 26 U.S.C. § 152(e) [1986], which states in pertinent part:

**(e) Support test in case of child of divorced parents, etc.**

**(1) Custodial parent gets exemption.**

Except as otherwise provided in this subsection, if:

(A) a child (as defined in section 151(c)(3)) receives over half of his support during the calendar year from his parents;

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

---

**2.** The master found that through November 26, 1994, the defendant earned $37,924.47 in gross wages. Considering this was 10.87 months of income, the result was an average gross monthly income of $3,488.91. This computes to an average annual income of $41,866.92.

**3.** This Internal Revenue Code exemption, 26 U.S.C. § 152(e), is discussed *infra* in section II.

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").

**(2) Exception where custodial parent releases claim to exemption for the year.** A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.

For purposes of this subsection, the term "noncustodial parent" means the parent who is not the custodial parent.

In *Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449 (1987), we found under then-existing statutes that family law masters and circuit courts could, within their sound discretion, allocate this income tax exemption to the non-custodial parent. The law master or court could compel the custodial parent to annually execute a waiver of the exemption, thereby allowing the non-custodial parent to use the exemption. We stated that:

As an incident to awarding child support, a circuit court may allocate the federal and state income tax child dependency exemption to the non-custodial parent under *IRC* § 152(e), as amended in 1984, by requiring the custodial parent to execute the necessary waiver under *IRC* § 152(e)(2)(A) to allocate the dependency exemption to the non-custodial parent.

Syllabus Point 6, *Cross, supra.* We reaffirmed our commitment to this holding in *Soriano v. Soriano,* 184 W.Va. 302, 400 S.E.2d 546 (1990), and added that family law mas-

ters and circuit courts should set forth in the record their reasoning why it was more equitable for the non-custodial parent to claim the tax exemption. Our holding was that:

In a case where the dependency exemption is allocated, that is, where a trial court requires the custodial parent to execute the necessary waiver pursuant to 26 U.S.C. Sec. 152(e)(2)(A), as amended, the trial court should set forth its reasons for doing so in the order awarding child support. These reasons should clearly demonstrate that it is more equitable to allocate the dependency exemption to the noncustodial parent than it would be to allow the custodial parent to claim the dependency exemption.

Syllabus Point 2, *Soriano, supra.*

Under *Cross, supra,* the allocation of the income tax exemption was a fact-based matter solely within the discretion of the family law master. The guiding principle for courts in allocating the exemption was, simply, to do that which was in the best interest of the child. *Soriano,* 184 W.Va. at 308, 400 S.E.2d at 552. "[T]his Court will not set aside the trial court's determination unless there is a clear abuse of discretion." *Id.*

After carefully reviewing the record in this case, we cannot conclude that the family law master's decision rises to the level of an abuse of discretion. While the family law master should have treated both parties in the same manner, and thus should have considered the plaintiff's entire "household" income if he considered the defendant's entire "household" income, we cannot in this case say that the result is inequitable. Thus, any error was harmless.

The plaintiff essentially urges that we adopt a blanket rule requiring family law masters and circuit courts to consider the "household" income of the parties in allocating the dependent exemption. We decline to go this far in our holding today, primarily because the Legislature has substantially altered the law in this area subsequent to the circuit court's ruling in this case.

### B.

#### *1996 and 1997 Legislative Changes*

In 1996, the Legislature substantially revised all statutes pertaining to family obli-

gations, and enacted new guidelines for child support. These statutes were again modified in the 1997 legislative session. Important to situations such as the case under consideration are two new statutes. First, family law masters may no longer consider the income of a "new" spouse or the household income of the parties; child support determinations must be based solely on the income of the parents obligated to pay support. *W.Va. Code*, 48A–1A–19(a) [1997] defines gross income:

> (a) "Gross income" means all earned and unearned income. The word "income" means gross income unless the word is otherwise qualified or unless a different meaning clearly appears from the context. When determining whether an income source should be included in the child support calculation, the court or master should consider the income source if it would have been available to pay child-rearing expenses had the family remained intact or, in cases involving a nonmarital birth, if a household had been formed. . . .

This *West Virginia Code* section lists various examples of gross income, and then states, in part:

> (d) "Gross Income" does not include:
>
> (1) Income received by other household members such as a new spouse. . . .

*W.Va.Code*, 48A–1A–19(d)(1) [1997]. While we are not at this point asked to interpret this statute, it appears to preclude a family law master or circuit court from considering the impact of a new spouse's income on a child's interests.

The second statutory change is that the Legislature has codified a family law master's discretion under *Cross* to allocate the dependent exemption to the non-custodial parent. *W.Va.Code*, 48A–1B–12 [1997] now states:

> Unless otherwise agreed to by the parties, the court shall allocate the right to claim dependent children for income tax purposes to the custodial parent except in cases of shared custody. In shared custody cases, these rights shall be allocated between the parties in proportion to their adjusted gross incomes for child support calculations. In a situation where allocation would be of no tax benefit to a party, the court or master need make no allocation to that party. However, the tax exemptions for the minor child or children should be granted to the noncustodial parent only if the total of the custodial parent's income and child support is greater when the exemption is awarded to the noncustodial parent.

This provision was passed by the Legislature on April 12, 1997, and takes effect in July 1997.[4] While this statute was not effective at the time that the circuit court rendered its decision in this matter, and does not act to alter any existing court orders, it will certainly apply to any future support modification orders made by the family law master or circuit court.

The first sentence of *W.Va.Code*, 48A–1B–12 [1997] would seem to mandate that the custodial parent should always receive the dependent's income tax exemption. However, the last sentence of the section tempers the first, and allows the allocation of the exemption to the non-custodial parent in situations where the net effect benefits the child. Under *W.Va.Code*, 48A–1B–12, a family law master should weigh the net effect on the child of allocating the tax exemption to either the custodial parent or non-custodial parent. The dependent's exemption should be allocated to the non-custodial parent when the total amount of income and support available to the child is greater than when the exemption is allocated to the custodial parent.

Accordingly, we conclude that subsequent to July 1, 1997, family law masters and circuit courts should normally allocate the income tax child dependency exemption allowed under 26 U.S.C. § 152(e) to the cus-

---

**4.** Determinations of the amount child support were formerly made under regulations found in the *Code of State Rules,* 78 C.S.R. 16. Many of these regulations were complimented or superseded by the statutory Guidelines for Child Support Awards enacted in the 1996 and 1997 legislative sessions. *See W.Va.Code*, 48A–1B–1 to –16 [1997]. Those provisions of the statutory Guidelines which alter the *Code of State Rules* and "which would create a new method of calculating child support obligations based on an income shares model" are not effective until July 1, 1997. *W.Va.Code*, 48A–1B–1(d) [1996].

todial parent. *W.Va.Code,* 48A–1B–12 [1997] now requires that the exemption be allocated to the custodial parent, except in cases of shared custody, where the parties have agreed otherwise, or where granting the exemption to the non-custodial parent will result in increased income and child support to the custodial parent. In shared custody cases, the dependent exemption shall be allocated between the parties in proportion to their adjusted gross incomes for child support calculations. In a shared custody situation where allocation would be of no tax benefit to a party, the circuit court or family law master need make no allocation to that party.

### III.

### *Conclusion*

For the reasons stated above, the March 11, 1996 order of the circuit court is affirmed.

Affirmed.